IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
H. RAO, et al.,                )
                               )
        Plaintiffs,            )
v.                             )    CIVIL ACTION NO. 04-398
                               )
H-QUOTIENT, et al.,            )
                               )
        Defendants.            )
```

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court following the Court's Order of July 11, 2005, reinstating the jury's verdict on conversion for Plaintiffs Adrian Naylor, Srini Seetharam, Virgil Meisenheimer, Salis Group LLC, Charles Gunderson, Robert McEwan and Alea Group LLC (collectively, "Plaintiffs"). The Court ordered Defendants H-Quotient, Inc. ("HQ") and Douglas Cohn ("Mr. Cohn") (collectively, "Defendants") to brief the Court on why punitive damages should not also be reinstated. Both the defendants and the plaintiffs have briefed the matter. The issues before the Court are (1) whether a reasonable jury could return a verdict of punitive damages in favor of the plaintiffs or whether the evidence at trial sufficiently justified an award of punitive damages, (2) whether the plaintiffs are limited to recovery of the $350,000 they sought in the *ad damnum* clause of their complaint, and (3) whether Virginia Code Ann. § 8.01-38.1 (Michie 2005) applies to each plaintiff's punitive damages

1

individually, or whether the sum of the plaintiffs' punitive damages must be less than or equal to $350,000, the amount of the statutory cap.

The Court will not reinstate the punitive damages award because a reasonable jury could not have returned an award of punitive damages since the evidence at trial did not justify an award of punitive damages. In light of the Court's decision to strike the punitive damages award, the Court need not address whether the plaintiffs are limited to the recovery they sought in their *ad damnum* clause or if Virginia's statutory cap on punitive damages applies to each plaintiff individually or the action as a whole.

## I. BACKGROUND

On February 24, 2005, the jury returned a verdict of both compensatory and punitive damages for the plaintiffs on their conversion claim.[1]  The chart below summarizes the jury's verdict on the conversion claim:

| Plaintiff | Compensatory Damages | Punitive Damages |
|---|---|---|
| Salis Group, LLC | $131,810 | $148,000 |

---

[1] All of the plaintiffs' claims and the jury's entire verdict are summarized in the Court's Memorandum Opinion of April 20, 2005.

| Alea Group, LLC | $44,100 | $48,000 |
| --- | --- | --- |
| Virgil Meisenheimer | $26,460 | $28,000 |
| Charles Gunderson | $24,500 | $28,000 |
| Adrian Naylor | $24,500 | $28,000 |
| Robert McEwan | $9,800 | $12,000 |
| Srini Seetharam | $98,000 | $108,000 |
| TOTAL | $359,170 | $400,000 |

The Court initially granted judgment as a matter of law to the defendants on the conversion claim, but then reinstated the jury's verdict on the conversion claim by Order dated July 11, 2005, following the plaintiffs' motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). At that time, the Court requested a briefing from both parties concerning whether it should not also reinstate the jury's verdict on punitive damages.

Defendants argue that punitive damages should not be reinstated because the evidence at trial was insufficient as a matter of law to support an award of punitive damages. Defs.' Mem. Law Opposing Reinstat. Jury Verdict (hereinafter "Defs.' Brief Opp. Reinstat.") at 1-7. In addition, Defendants argue that Plaintiffs should be limited to the punitive damages award they sought in their complaint – $350,000. *Id.* at 8 (citing *Powell v. Sears, Roebuck & Co.*, 344 S.E.2d 916, 919 (Va. 1986)). Finally, Defendants assert that the jury award of $400,000 in punitive damages exceeds Virginia's statutory limitation on

3

punitive damages of $350,000 per lawsuit.  *See id.* at 7-8 (citing Va. Code Ann. § 8.01-38.1 (Michie 2005)).

The plaintiffs, on the other hand, argue that the evidence at trial concerning Defendants' conduct justifies an award of punitive damages.  Plaintiffs support their argument by pointing out that the jury found liability on common law fraud and federal securities fraud, although the jury found no damages on either of those claims and the Court granted judgment as a matter of law to the defendants on those claims.  Also, Plaintiffs assert that Defendants' conduct met the legal standard to award punitive damages.  According to the plaintiffs, the evidence showed that the plaintiffs delivered their stock certificates the defendants in December 2002, and that HQ issued a press release on December 13, 2002, stating that IntelliServices had been purchased for HQ shares and options.  Pls.' Brief Supp. Reinstat. (hereinafter "Pls.' Brief") at 4 (citing Pls.' Exh. 137).  On December 19, 2002, HQ announced that IntelliServices would continue as a wholly-owned subsidiary of HQ.  *Id.* at 5 (citing Pls.' Exh. 138).  In its Form 10 KSB/A for calendar year 2002, filed in May 2003, HQ represented to the Securities and Exchange Commission that it had acquired "100% of IntelliServices" in March 2003.  *Id.* (citing Pls.' Exh. 149).  Furthermore, Mr. Cohn told Mr. William Tomlin, of Alea Group, that he would receive the HQ shares shortly after a Spring 2003 phone call.  *Id.*  Nevertheless, argue

4

the plaintiffs, HQ failed to deliver HQ shares to the plaintiffs when agreed upon. Defense counsel returned the IntelliServices stock certificates back to six of the plaintiffs twenty months after HQ received them. Defendants then returned HQ shares to all the plaintiffs the week before the February 2005 trial. Plaintiffs argue that this conduct justifies an award of punitive damages.

In addition, Plaintiffs assert that they are entitled to the full $400,000 in punitive damages, not just the $350,000 they sought in the *ad damnum* clause of their complaint because they filed suit in federal, not Virginia, courts. *Id.* at 8-9. In their view, Federal Rule of Civil Procedure 54(c), as interpreted by the Fourth Circuit, allows plaintiffs to recover more than they sought in their complaint. *Id.* at 9-10 (citing *Minyard Enters., Inc. v. Southeastern Chem. & Solvent Co.*, 184 F.3d 373 (4th Cir. 1999)). Finally, Plaintiffs argue that Va. Code Ann. § 8.01-38.1 does not limit their recovery to $350,000 since each plaintiff could have brought his suit separately against the defendants. *Id.* at 10-11. According to the plaintiffs, the Virginia statute does not limit damages that can be awarded to multiple plaintiffs, but rather, it limits damages to actions when they accrue, not when suits are filed. *Id.* at 11.

## II. DISCUSSION

### A. Standard of Review

In light of the Court's decision to alter or amend the original judgment pursuant to Federal Rule of Civil Procedure 59(e), reinstating the jury's verdict as to compensatory damages on the conversion claim, the Court will begin its inquiry assuming that the jury's original verdict on punitive damages was proper. In other words, it will consider the defendant's brief in the posture of a post-trial motion for judgment pursuant to Federal Rule of Civil Procedure 50(b) even though the Court requested the briefing from the defendants and it did so over ten days after judgment was initially entered.

"If a reasonable jury could reach only one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489-90 (4th Cir. 2005) (citing *Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 160 (4th Cir. 1988)). If, however, the evidence is susceptible to more than one "reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *See Hofherr v. Dart Indus. Inc.,* 853 F.2d 259, 261-62 (4th Cir.1988). The jury verdict must stand "if there is evidence that a reasonable jury could return a verdict in favor of the non-moving

6

party." *Lovell v. BBNT Solutions, LLC*, 295 F.Supp.2d 611, 617 (E.D.Va. 2003). In making this determination, the Court must review the evidence in the light most favorable to the non-moving party. *See Myrick*, 395 F.3d at 490 (citing *Hofherr,* 853 F.2d at 261-62).

**B. Analysis**

The Court declines to reinstate the award of punitive damages because the evidence at trial was insufficient to sustain an award of punitive damages under Virginia law. Punitive or exemplary damages are permissible "only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Xspedius Mgm't Co. v. Stephan*, 611 S.E.2d 385, 387 (Va. 2005) (quoting *Giant of Virginia, Inc. v. Pigg*, 152 S.E.2d 271, 277 (1967)). In Virginia courts, punitive damages are generally disfavored, and they are to be awarded "only in cases involving the most egregious conduct." *Id.* (quoting *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 668 (Va. 1992)). Exemplary damages are not intended to compensate a plaintiff, but rather "for the protection of the public, as a punishment to the defendant, and as a warning and example to deter him and others from committing like offenses." *PGI, Inc. v. Rathe Prods., Inc.*, 576 S.E.2d 438, 444 (Va. 2003) (quoting *Baker v. Markus*, 114 S.E.2d 617, 620-21 (Va. 1960)). A

7

plaintiff must show "a degree of aggravation" beyond what is required for compensatory damages relief to receive punitive damages. *Sit-Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 928 (4th Cir. 1984). In commercial dealings, Virginia courts require "an element of wantonness, or malice, or overreaching beyond mere 'shadiness.'" *Id.* (citing *Jordan v. Sauve*, 247 S.E.2d 739, 741 (Va. 1978)).

Every case of conversion does not merit a punitive damages award. *See id.* (pointing out that Virginia law does not require the submission of a punitive damages instruction even in cases involving torts having malice as an element, but rather, requires the Court to assess the evidence at trial in deciding whether to give such an instruction). Conversion is "any wrongful exercise or assumption of authority... over another's goods, depriving him of their possession; [and any] act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it." *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956)). Although the jury found that the defendants wrongfully withheld the plaintiffs' property, the plaintiffs did not establish that the defendants' conduct was egregious enough to merit an award of punitive damages. Plaintiffs arguments in favor of reinstating punitive damages are: (1) HQ issued a press release on December 13, 2002, stating

8

that IntelliServices had been purchased for HQ shares and options, (2) HQ issued a press release on December 19, 2002, stating that IntelliServices would continue as a wholly-owned subsidiary of HQ, (3) HQ's Form 10 KSB/A that stated it had purchased 100% of IntelliServices, (4) William Tomlin, the representative of Alea Group was told his HQ shares would be delivered in the Spring of 2003, and they were not, and (5) the jury's finding of liability on the common law and securities fraud claim, despite not finding any damages, shows the defendants acted fraudulently.

The evidence put forth by the plaintiffs is not enough to justify a punitive damages award. First, the fact that HQ was in the process of purchasing IntelliServices negates allegations of malice or reckless disregard as to the press releases and the Form 10 KSB/A. After all, the defendants did sign agreements with Dr. Hemanth Rao, Prithvi Rao, and Mohan Korrapati to purchase IntelliServices. The argument about finding liability on the common law and securities fraud claims cannot be considered by the Court since the jury found the plaintiffs proved no damages and the Court awarded judgment to the defendants on those claims. The phone call between Mr. Cohn and Mr. Tomlin is not conduct egregious enough to justify a punitive damages award. *See See Sit-Set, A.G.*, 747 F.2d at 928 (stating that in commercial dealings, Virginia courts require "an element

9

of wantonness, or malice, or overreaching beyond mere 'shadiness'"). Consequently, what remains after the jury's findings is a straight conversion case; the Court declines to reinstate punitive damages in this case because the evidence at trial did not show aggravating factors justifying a punitive damages award.

Because the Court will not reinstate the punitive damages award, the Court need not address whether the plaintiffs may recover more than they sought in the *ad damnum* clause and whether Virginia's statutory cap on punitive damages applies to each plaintiff individually or to the action as a whole.

### III. CONCLUSION

Because the evidence at trial did not justify an award of punitive damages, or a reasonable jury could not have returned an award of punitive damages, it is hereby

ORDERED that the Court will not reinstate the punitive damages award.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this __17th___ day of August, 2005.

_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
8/17/05